

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
     **JUDGE**

## LETTER OPINION

February 18, 2009

Robert Edward Beers
108 Leigh Street
Clinton, NJ 08809
(*Attorney for Plaintiffs Laura Busse and Richard Busse*)

Francis X. Riley, III
Michael Anthony Rowe
Saul Ewing LLP
750 College Road East
Suite 100
Princeton, NJ 08540
(*Attorneys for Defendants Chevy Chase Bank, F.S.B. and B.F. Saul*)

    **Re:**    **Busse et al. v. Homebank LLC et al.**
             **Civil Action No. 2:07-CV-03495 (WJM) (MF)**

Dear Counsel:

      This matter comes before the Court on Defendants Chevy Chase Bank, F.S.B. ("Chevy Chase") and B.F. Saul II's (incorrectly pleaded as B.F. Saul) motion to dismiss Plaintiffs Laura Busse and Richard Busse's Second Amended Complaint with prejudice, as well as Plaintiffs' separate motion for summary judgment. The Court did not hold oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' motion for summary judgment is **DENIED**.[1]

---

[1] Plaintiffs fail to comply with L. Civ. R. 56.1. For purposes of a motion for summary judgment, each party is required to submit a statement that "sets forth material facts as to which

## BACKGROUND AND PROCEDURAL HISTORY

This is a consumer fraud action arising out of an adjustable rate mortgage ("ARM") refinancing. In March 2005, Laura Busse responded to a New York City radio commercial offering refinancing at 1.50% interest. She spoke to Vincent Seneri, a mortgage broker for Homebank LLC.[2] (Second Amend. Compl. ¶ 2.) Seneri informed Laura about a government program for people with excellent credit. (*Id.* at ¶ 3.) He checked Plaintiffs' credit history and informed them that they qualified for the program. (*Id.* at ¶ 4.) Under the terms of the mortgage, Plaintiffs would pay 1.00% for the first year, and 4.70% for the following four years. (*Id.* at ¶ 5.)

Homebank sent Plaintiffs a copy of the loan application, as well as a Good Faith Estimate and a Truth in Lending Disclosure Statement ("TILDS"). (*Id.* at ¶ 6.) The Good Faith Estimate stated that the loan was for $365,000 at an interest rate of 1.00%. (*Id.*) Homebank's TILDS contained a box titled "Annual Percentage Rate" ("APR") that noted that the mortgage was subject to a "a yearly rate" of 4.835%. (*Id.*)

On April 6, 2005, Plaintiffs received ten documents from Chevy Chase, including a preliminary TILDS and an ARM Disclosure.[3] (*Id.* at ¶ 8.) The preliminary TILDS

---

there exists or does not exist a genuine issue." L. Civ. R. 56.1. Denial is proper if the moving party violates this rule. *See Hoch v. Phelan*, 796 F. Supp. 130, 131 (D.N.J. 1992) (denying summary judgment for failure to comply with this rule); *Comose v. N.J. Transit Rail Operations, Inc.*, Civ. No. 98-2345, 2000 WL 33258658, at *1 (D.N.J. Oct. 6, 2000) (stating that failure to comply with this rule is sufficient grounds for denying summary judgment). Here, Plaintiffs did not submit the required statement of undisputed facts and provide no basis for excusing this requirement. Since discovery has not occurred in this case, an organized statement identifying the foundation for all evidence relied on is particularly important. Accordingly, Plaintiffs' motion for summary judgment is denied.

[2] Plaintiffs voluntarily dismissed Defendant Homebank LLC, which dissolved, and filed an Amended Complaint to correct the caption. Plaintiffs also voluntarily dismissed Kimberly Olmstead without prejudice on November 11, 2007 by stipulation.

[3] The Court may properly consider the full text of the ARM Disclosure, preliminary TILDS, and final TILDS even though Plaintiffs did not attach these documents to their Second Amended Complaint. Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment. *Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 342 (3d Cir. 2004). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." In re *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Here, the gravamen of Plaintiffs' Second Amended Complaint is that Chevy Chase failed to properly disclose

listed several interest rates, a payment schedule, as well as definitions of various financial terms.  The TILDS stated that the loan was subject to an APR of 6.009%, which represented the "cost of your credit as a yearly rate."  It also contained, in small print on the top right corner, the phrase "Note Interest Rate: 1.000%."  (*Id.* at ¶ 9.)  The document listed amounts and number of payments, which were grouped yearly for the first five years.

| Number of Payments | Amount of Payments | Payments are Due Beginning |
|---|---|---|
| 12 | 1,173.98 | 04/06/2005 |
| 12 | 1,262.03 | 04/06/2006 |
| 12 | 1,356.68 | 04/06/2007 |
| 12 | 1,458.43 | 04/06/2008 |
| 12 | 1,567.81 | 04/06/2009 |
| 300 | 2,551.16 | 04/06/2010 |

(*Id.*)  The TILDS provided Plaintiffs with a definition of APR.  The document defined APR as "the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge."  (Pl. Ex. on Mt. for Summ. J. as to Liability and in Opp. to Defs.' Mot. to Dismiss ("Pl. Ex.") 22.)  The definition cautioned that the APR was "not the Note rate for which the borrower applied," because of various finance charges, and informed Plaintiffs that the APR was a "rate higher than the interest rate shown on your Mortgage/Deed of Trust Note."  (*Id.* at ¶ 10.)

In addition to the preliminary TILDS, Plaintiffs received an ARM Disclosure, which notified Plaintiffs that their interest rate under the mortgage would change.  The disclosure stated that "[f]ollowing an initial period, the interest rate will vary in response to movement in an index . . . plus a fixed amount of percentage points" and detailed that "[t]he time period for the initial interest rate is one month."  (Pl. Ex. 28.)  The disclosure warned Plaintiffs that "[t]his is not a commitment to make a loan to you, nor does it describe the specific terms of the loan the Lender may offer you.  Those terms will be described in your Note and Deed of Trust or Mortgage."  (Second. Amend. Compl. ¶ 11.)

---

information regarding the applicable interest rate for an adjustable rate mortgage in violation of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.  The disclosures provided by Chevy Chase to Plaintiffs included the preliminary and final TILDS, as well as the ARM Disclosure.  Therefore, Plaintiffs' claims are based upon these disclosures and may be properly considered.

On April 19, 2005, Chevy Chase and Plaintiffs closed the loan. In conjunction with the closing, Plaintiffs received a battery of documents from Chevy Chase, including the Adjustable Rate Note, an Adjustable Rate Rider, and a final TILDS. (*Id.* at ¶ 12.) The final TILDS tracked the preliminary TILDS except with nominally higher values for the Amount of Payments, APR, Finance Charge, and Amount Financed. (*Id.* at ¶ 13.) The definition of APR remained the same. (*Id.*)

The Adjustable Rate Note and Adjustable Rate Rider recited that Plaintiffs will "pay interest at the yearly rate of 1.000%" and notified Plaintiffs that the "interest rate . . . may change." (*Id.* at ¶ 14.) The document also informed Plaintiffs that the interest rate "may change . . . on the first day of June, 2005 and on that day every month thereafter." (*Id.* at ¶ 15.)

Starting in June 2005, Chevy Chase began sending monthly invoices to Plaintiffs. (*Id.* at ¶ 26.) After Plaintiffs paid 1.00% for the first month, the interest rate jumped to 6.25%. The rate continued to climb until it reached 8.25%, at the beginning of the second year. (*Id.*) Plaintiffs allege that the refinancing resulted in negative amortization, adding over $11,000 in principal to their mortgage. (*Id.*)

On July 27, 2007, Plaintiffs filed a three count complaint against Chevy Chase and Saul. Defendants filed a motion to dismiss on October 31, 2007, which the Court granted without prejudice on June 5, 2008. Plaintiffs subsequently filed a Second Amended Complaint on August 8, 2008.

The Second Amended Complaint makes the following allegations. Counts One and Two allege violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Plaintiffs seek a rescission of the mortgage issued by Chevy Chase, as well as attorneys' fees and costs, in Count One and compensatory and punitive damages in Count Two. Count Three alleges common law fraud against Saul, while Counts Four and Five allege violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq*., based on allegations of unconscionable commercial practices in securing and subsequently keeping Plaintiffs' business. On September 8, 2008, Defendants filed a second motion to dismiss pursuant to Fed. R. Civ. Pro 12(b)(2) for lack of personal jurisdiction over Saul and Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim.[4] In response, Plaintiffs filed a motion for summary judgment on October 7, 2008. Both motions are opposed.

---

[4] Defendants' Notice of Motion requests a dismissal of Counts Two, Three, Four, and Five of Plaintiffs' Second Amended Complaint. Both parties in their supporting papers, however, address the issue of whether Plaintiffs are entitled to rescission of the mortgage in Count One. As such, the Court will address whether Plaintiffs can maintain such a claim *infra*.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L.Ed. 2d 343 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed. 2d 59 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id.* at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

## DISCUSSION

**A.      Personal Jurisdiction over B.F. Saul II**

Defendants urge the Court to dismiss the Second Amendment Complaint with respect to Saul for lack of personal jurisdiction. Under Fed. R. Civ. P. 12(b)(2), plaintiffs bear the burden of establishing sufficient facts showing that jurisdiction is proper. *See Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Since the Court has not held an evidentiary hearing, plaintiffs need only to establish "a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). The Court must accept plaintiffs' allegations as true and resolve all disputed facts in their favor. *Id.*

New Jersey allows out-of-state service to the outermost limits permitted by the Due Process Clause of the United States Constitution. *See Miller Yacht Sales, Inc.*, 384 F.3d at 96. Consistent with the Fourteenth Amendment, plaintiffs must show that a defendant had minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Personal jurisdiction arises when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In other words, a defendant must engage in some purposeful conduct within the forum "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). To demonstrate such conduct, a "plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984)).

When analyzing specific personal jurisdiction, courts examine the relationship among the parties, the forum, and the litigation. *Miller Yacht Sales*, 384 F.3d at 96. A single contact with the forum may be sufficient, if the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472. Even if plaintiffs establish sufficient contacts, the court must also assess whether exercising jurisdiction in such a case comports with notions of fair play and substantial justice. *Id.* at 476. Thus, a finding of specific personal jurisdiction requires courts to examine whether: (1) the defendant purposefully directed its activities at the forum state or otherwise purposefully availed itself to the privileges of conducting activities within the state; (2) the plaintiff's claims arise out of or relate to one of those specific activities; and (3) the assertion of jurisdiction comports with notions of fair play and substantial justice. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

In turning to the facts of this case, Plaintiffs fail to establish general or specific jurisdiction over Saul. The sole basis for Plaintiffs' claims against Saul is that he managed and controlled Chevy Chase. (Second. Amend Compl. ¶ 31-38.) Indeed, Plaintiffs admit that "Saul did not participate in the sale of the loan to the Busses." (*Id.* at ¶ 38.) However, jurisdiction over an individual does not exist simply because he or she is an agent or employee of an organization which presumably is amenable to jurisdiction in

this Court. *Nicholas v. Saul Stone & Co., LLC*, 224 F.3d 179, 184 (3d Cir. 2000). Plaintiffs do not provide evidence that Saul is resident of New Jersey, that Saul owned property in New Jersey, or that Saul purposefully directed any activity towards this forum. As such, Defendants' motion to dismiss the Second Amended Complaint, pursuant to Fed. R. Civ. 12(b)(2), is **GRANTED** with regards to Saul. Count Three will be dismissed in its entirety and Count Four will be dismissed with regards to Saul.[5]

**B.     TILA Violations**

In Counts One and Two of the Second Amended Complaint, Plaintiffs allege various TILA violations. They seek a rescission of the mortgage in Count One, as well as attorneys' fees and costs, and compensatory and punitive damages in Count Two.

*1.     Rescission of the Mortgage*

In limited circumstances, plaintiffs may rescind a loan under TILA. 15 U.S.C. § 1635; 12 C.F.R. § 226.23. Generally, a borrower has three days to rescind after the closing or receipt of notice of the right to rescind along with all material disclosures. If a lender fails to provide a borrower with notice of the right to rescind or if the lender fails to make a material disclosure, the period in which a plaintiff may exercise the right to rescind is extended. "Material disclosures" are "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, [and] the payment schedule." 12 C.F.R § 225.23(2). "Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature." Federal Reserve Board Staff Commentary, 12 C.F.R. Pt. 226, Supp. I, cmt. § 226.23.

The right of rescission is subject to additional qualifications. A borrower may not rescind the mortgage if the borrower refinances with the original lender. *See* 15 U.S.C.A. § 1635(e)(2); 12 CFR § 226.23(f); *see also* 51 Fed Reg 45296, 45297-98 (Dec 18, 1986) (stating that the Board retracts proposal to exempt "refinancings" by nonoriginal

---

[5] Defendants also seek to strike purportedly scandalous remarks in Count Three pursuant to Fed. R. Civ. P. 12(f). The remarks deal with an unrelated housing/loan discrimination matter that Chevy Chase previously settled. "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, Courts generally disfavor motion to strike, especially absent a showing of prejudice by the moving party. *J. & A. Realty v. City of Asbury Park*, 763 F. Supp. 85, 87 (D.N.J. 1991). Since Defendants fail to show that they are prejudiced by these statements, the Court declines to order these statements stricken.

7

creditors). Moreover, the right of rescission expires three years after the loan closes or upon the sale of the secured property, whichever date is earlier. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998); 15 U.S.C. § 1635(f).

Here, viewing the facts in a light most favorable to the Plaintiffs, Chevy Chase failed to make material disclosures by neglecting to clearly and conspicuously disclose the payment periods, the annual percentage rate, and the variable interest rate feature. The documents provided by Chevy Chase present conflicting information about the APR. The Adjustable Rate Note and the Adjustable Rate Rider both inform Plaintiffs that they will pay a "yearly rate of 1.000%." (Second Amend. Compl. ¶ 14.) This preliminary and final TILDS reinforce this information by reciting in small print on the top right corner "Note Interest Rate: 1.000%." These same documents list APRs of approximately 6.00%, which Chevy Chase states is the "cost of your credit as a yearly rate." (*Id.* at ¶¶ 9, 12.)

Moreover, Chevy Chase's disclosures obscure when the initial rate of 1.00% will change. At most, the disclosures indicate that the interest rate "may change" after June 2005. The Adjustable Rate Note and Adjustable Rate Rider detail that the "yearly interest rate of 1.00% . . . may change on the first day of June, 2005 and on that day every month thereafter." (*Id.*) The preliminary and final TILDS even group the schedule of payments yearly for the first five years, providing further support to the contention that the introductory rate will last a full year. (*Id.* at ¶¶ 9, 12.)

While the ARM Disclosure explicitly states that the "time period for the initial interest rate is one month." The same document warns that this disclosure does not "describe the specific terms of the loan the Lender may offer you. Those terms will be described in your Note and Deed of Trust or Mortgage." As stated above, the Adjustable Rate Note emphasizes a "yearly rate of 1.00%" that "may change" after the first month, not a definitive statement that the 1.00% initial rate will change after the first month.[6]

---

[6] The Court will not consider the Truth in Lending Worksheet ("TIL Worksheet") referenced by Defendants in their reply. A court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiffs dispute the authenticity of this document. The TIL Worksheet is not signed, dated, or referenced in the April 6, 2005 cover letter that lists ten documents sent by Chevy Chase to Plaintiffs. (Pl. Ex. 20.) Moreover, Plaintiffs do not refer to the TIL Worksheet anywhere in the Second Amended Complaint. Defendants attempt to characterize this document as part of the TILDS. However, the two documents have distinct formatting and pagination.

As admitted by Defendants, Plaintiffs did not refinance the mortgage through Chevy Chase bank, but rather with a different lender. Plaintiffs closed on the loan on April 19, 2005 and filed their Complaint on July 27, 2007, prior to the expiration of the three-year statute of limitations.[7] Therefore, Plaintiffs may maintain a claim for rescission under TILA. Defendants' motion to dismiss Count One is **DENIED**.

*2.      Compensatory and Punitive Damages*

Unlike a request for rescission, claims for compensatory and punitive damages under TILA are subject to a one-year statute of limitations. *Marangos v. Swett*, Civ. No. 07-5937, 2008 WL 4508542, at *5 (D.N.J. Sept. 29, 2008). As stated in 15 U.S.C. § 1640(e):

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . .[8]

This limitations period accrues from the time of closing. *Devine v. America's Wholesale Lender*, Civ. No. 07-3272, 2008 WL 4367489, at *3 (E.D. Pa. Sept. 25, 2008); *Kemezis v. Matthew*, Civ. No. 07-5086, 2008 WL 2468377, at *4 (E.D. Pa. June 16, 2008).

In certain situations, TILA's one-year statute of limitations may be extended by equitable tolling. *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998). Equitable tolling is appropriate: (1) where the defendant actively misleads the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff timely

---

[7] Plaintiffs filed the Second Amended Complaint on August 2, 2008, after the expiration of the applicable three-year statute of limitations. An amendment of a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). The TILA violations initially plead in the Second Amended Complaint relate back to conduct attempted to be set out-in the original pleading. For statute of limitations purposes, the Second Amended Complaint was filed on July 27, 2007.

[8] The one year statute of limitations "does not bar a person from asserting a violation of this subchapter in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action . . . ." 15 U.S.C. § 1640(e). Plaintiffs do not seek recoupment or a set-off.


asserted his or her rights mistakenly in the wrong forum. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). The Third Circuit has found equitable tolling proper when a lender attempts to avoid TILA liability by concealing the fraudulent activity until after the expiration of the one-year limitations period. *Ramadan*, 156 F.3d at 502.

Here, Plaintiffs' claim for compensatory and punitive damages is time-barred. Plaintiffs filed this action after the expiration of the limitations period. The statute of limitations began to accrue at the time of closing, which occurred on April 19, 2005. Plaintiffs did not file their Complaint until July 27, 2007, well after the expiration of the one-year limitations period.

Moreover, equitable tolling is not appropriate. Plaintiffs fail to provide evidence that Chevy Chase actively mislead Plaintiffs, prevented Plaintiffs from asserting their rights, or that Plaintiffs timely asserted their rights in a different forum. The Complaint lacks evidence that Chevy Chase fraudulently concealed any activity until after the expiration of the one-year limitations period. Accordingly, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is **GRANTED** with regards to Count Two.

**C.     New Jersey Consumer Fraud Act**

In Counts Four and Five, Plaintiffs further allege that Chevy Chase violated the CFA by engaging in "acts and tactics" that were "unconscionable" to secure and subsequently keep Plaintiffs' business. (Second Amend. Compl. ¶¶ 39-43.)

The CFA is one of the strongest consumer protection statute in the country. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15, 647 A.2d 454 (N.J. 1994). The statute seeks to protect consumers by "eliminating sharp practices and dealing in the marketing of merchandise and real estate." *Channel Cos. v. Britton*, 167 N.J. Super. 417, 418, 400 A.2d 1221, 1221 (N.J. App. Div. 1979) (citations omitted). The history of the CFA has been one of "constant expansion," *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604, 691 A.2d 350, 364 (N.J. 1997), with the Act liberally construed in favor of consumers, *Cox*, 138 N.J. at 14. Accordingly, New Jersey courts have found that the CFA applies to the "provision of credit," including adjustable rate mortgages. *Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J. Super. 254, 278-80, 778 A.2d 529, 543-544 (N.J. App. Div. 2001) (finding that mortgagee who obtained an adjustable rate mortgage can maintain an action against mortgagor and assignee under the CFA based on allegations of unconscionable commercial practices).

The CFA makes it unlawful for "any person"[9] to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. To state a claim under the CFA, plaintiffs must allege three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiffs; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss. *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12 (N.J. App. Div. 2003).

The Supreme Court of New Jersey has interpreted the word "unconscionable" liberally to effectuate the statute's public purpose. *Kugler v. Romain*, 58 N.J. 522, 543, 279 A.2d 640, 651 (N.J. 1971). It is not intended to "erase the doctrine of freedom of contract, but to make realistic the assumption of the law that the agreement has resulted from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Id.* at 544. The standard of conduct contemplated by the CFA's unconscionability clause is "good faith, honesty in fact and observance of fair dealing." *Id*. The need to apply the standard is most acute in situations involving the uneducated and inexperienced. *Id*.

When viewed in a light most favorable to Plaintiffs, the Second Amended Complaint sufficiently alleges that Chevy Chase engaged in unlawful commercial practices by disclosing misleading, and sometimes contradicting, information designed to trick Plaintiffs into obtaining an adjustable rate mortgage with a teaser rate of 1.00% for the first month, as opposed to an adjustable rate mortgage with a rate of 1.00% for the first year.

As stated more fully above, the various documents provided by Chevy Chase present conflicting yearly interest rates. The disclosures obscure when the initial rate of 1.00% will change and the preliminary and final TILDS group the schedule of payments yearly for the first five years, providing further support to the contention that the introductory rate will last a full year.

Even the ARM Disclosure, which explicitly states that the "time period for the initial interest rate is one month," cautions that this disclosure does not "describe the specific terms of the loan the Lender may offer you." The document refers Plaintiffs to

---

[9] Under the CFA, the term "person" includes any "partnership, corporation, company, trust, business entity or association . . ." N.J.S.A. 56-8:1. As such, Chevy Chase qualifies as a "person" under the Act.

11

look at the terms described in the Note and Deed of Trust or Mortgage, which emphasize a "yearly rate of 1.00%" that may change after the first month.

In total, Chevy Chase's emphasis on a "yearly rate of 1.00%," when coupled with the imprecise language regarding the timing of the initial rate changes, presents sufficient grounds for Plaintiffs to claim that Chevy Chase violated the CFA.  As a result of this unlawful conduct, Chevy Chase induced Plaintiffs into refinancing their mortgage to their detriment.  Plaintiffs suffered an ascertainable loss of $11,000 in the form of negative amortization.  (*Id.* at ¶ 26.)

Defendants attempt to avoid this conclusion by maintaining that claims under the CFA must meet the heightened pleading standards under Fed. R. Civ. P 9(b).  Defendants premise this argument on several Third Circuit decisions, which apply Rule 9(b)'s heightened pleading standard to actions involving claims of common law fraud and the CFA.  *See Frederico v. Home Depot*, 507 F.3d 188, 200-01 (3d Cir. 2007); *F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994).  Relying on these decisions, several district courts within this district have concluded that all CFA claims must satisfy this heightened standard.  *See, e.g.*, *Kalow & Springnut, LLP v. Commence Corp.*, Civ. No. 2009 WL 44748, *3 (D.N.J. Jan. 6, 2009); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999).

Without addressing whether Rule 9(b) applies to an action involving a CFA claim solely for unconscionable commercial practices without an accompanying common law fraud claim, the Court determines that Plaintiffs state their claim with particularity.  Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged."  *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004).  To satisfy this standard, plaintiffs must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  *See id.* at 224.

In the instant matter, Plaintiffs place Chevy Chase on notice of the allegedly fraudulent misconduct.  As stated in the Second Amended Complaint, Plaintiffs allege that the disclosures provided by Chevy Chase to Plaintiffs on April 6, 2005 and April 19, 2005 contain representations that allegedly constitute "unconscionable commercial practices."  Plaintiffs quote passages from the Adjustable Rate Note, Adjustable Rate Rider, and preliminary and final TILDS to support their claim.  This information substantiates their allegations and injects a measure of substantiation into their claims.

Moreover, under New Jersey case law, Plaintiffs do not need to allege that Chevy Chase intended to engage in these alleged unconscionable practices. Unconscionable commercial practices are categorized as "affirmative acts," which do not require a showing of "intent to deceive" or "knowledge of the falsity of the representation." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605, 691 A.3d 350, 365 (N.J. 1997). Plaintiffs merely must show that a defendant committed an unlawful act. *Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234, 245, 872 A.2d 783, 790 (N.J. 2005). As stated above, Plaintiffs have met this burden.

As for the remaining claim, Count Five, Plaintiffs fail to sufficiently plead that Chevy Chase engaged in unconscionable commercial practices to maintain Plaintiffs as customers. Plaintiffs allege customer dissatisfaction. Under the CFA, customer dissatisfaction does not rise to the level of an unlawful act, rendering Plaintiffs' claim deficient. *See Turf Lawnmower Repair v. Bergen Record Corp.*, 139 N.J. 392, 417, 655 A.2d 417, 430 (N.J. 1995).

Accordingly, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is **DENIED** with regards to Chevy Chase in Count Four and **GRANTED** with regards to Count Five.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction over Saul is **GRANTED**. Count Three is dismissed in its entirety, and Count Four is dismissed with regards to Saul. Defendants' motion to dismiss Counts Two, Four, and Five, pursuant to Fed. R. Civ. P. 12(b)(6), is **GRANTED** with regards to Counts Two and Five and **DENIED** with regards to Count One and with regards to Chevy Chase in Count Four. An appropriate Order accompanies this Letter Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**